UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH PEDIGO and TIM PEDIGO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2-10-0028 |
| | ) | Judge Campbell |
| BARR-NUNN TRANSPORTATION, INC. and | ) | |
| ROBERT A. COFFARO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this negligence action is Defendants Barr-Nunn Transportation, Inc.'s ("Barr-Nunn's") and Robert A. Coffaro's ("Coffaro's") Motion for Summary Judgment (Docket No. 20). Plaintiff Jeremiah Pedigo ("Pedigo") and his father, Plaintiff Tim Pedigo, have filed a response in opposition to the Motion (Docket No. 26), to which Defendants have replied (Docket No. 30).

On March 1, 2009, Pedigo was driving his father's 1995 Honda Accord eastbound in the right hand lane on I-40 in Putnam County, Tennessee. Riding in the back seat were Robert South ("South") and April Cook. Traveling along that same portion of the roadway was Coffaro, who was operating a tractor trailer for his employer Barr-Nunn.

At approximately 3:43 a.m., Coffaro attempted to pass Pedigo. Unfortunately, Coffaro's tractor trailer struck Pedigo's vehicle, resulting in significant personal injuries to Pedigo and property damage. At the time of the collision, it was snowing.

During his deposition, Coffaro described the events leading up to the accident as follows:

Q. Okay. Tell me about the accident.

1

> A. I was going about 50 miles an hour in the left-hand lane, and I seen a car on the right going slower than I was going, and I got right up – right up unto him, and he went right in front of me. I mean, I was there on him. He went in front of me.
> Q. Okay. When you say "he went right in front of" you—
> A. Right in front in my lane.
> Q. Did he switch lanes to get in front of you?
> A. I don't know. He lost control or something. He went right in front of me.
> Q. Well, you say he "lost control of something." Tell me what you observed.
> A. I believe he lost control, but I wasn't—I wasn't driving his car, so I don't know.
> Q. Okay. But why did you believe he lost control?
> A. Because he went in front of me. He went into my lane.
> Q. Okay. Was it in an erratic manner or something about--
> A. Erratic manner.

(Coffaro Depo. at 49-50). Coffaro also offered the following testimony in relation to the accident:

> Q. Okay. As you approached Mr. Coffaro's [sic] vehicle, did you notice anything, again, unusual about the car?
> A. No.
> Q. Okay. So what was the first indication that you got that there may be an accident?
> A. That--right when he was right in front of me.
> Q. Okay.
> A. Right when he went like this right in front me.
> Q. So you see him from a distance, we're not sure what distance.
> A. Right
> Q. You just observe that he is slower. Other than that, there is nothing unusual?
> A. Right.
> Q. You don't do anything to change your speed, and it's not until you are right up on him, the first odd movement of the car is him going into your lane that way?
> A. Right.

(Id. at 71-72). Coffaro further testified that, at the time of the accident, he was not distracted and was not listening to the radio, talking on a cellphone, or listening to his CB radio. ((Id. at 53-59).

For his part, Pedigo described the events leading up to the accident in his deposition as follows:

> Q. And tell me what happened until the last thing you remember.
> A. Like I say, we were talking, discussing about the night and the road conditions. Right before the accident, I remember I think we was going up an incline. And one of the last things I remember is I started to slide a bit. When I was starting to slide, I looked in my side mirrors. I looked in one of the mirrors and I seen bright headlights coming. It looked like they was coming fast. It looked like they was

2

> jumping up and down. And I slid a little bit left. The last thing I remember is the hard impact and the truck hit me in my driver's side.
>
> \*      \*      \*      \*
>
> Q. Okay. You started telling me how you winded up. You say you started sliding?
> A. Yes sir. I believe it was to the right and then the left. It was going up the hill. I kind of like started spinning. I guess I kind of lost traction. I started sliding . . . I believe it was to the right and then to the left. I'm not exactly sure. But that was the first time I actually started sliding. I looked in my mirrors, because that was a basic instinct of driving, and I seen headlights coming at me at what looked like very, very fast. They was kind of jumpy and bouncy. And the next thing is when I slid, the truck . . . The last thing I remember is the truck hit me in my side. Hit so hard it took my . . . All I remember is it taking my breath.

(Jeremiah Pedigo Depo. at 55-56).

In moving for summary judgment, Defendants rely almost exclusively on Coffaro's and Pedigo's deposition testimony and argue that "[t]he evidence in the record affirmatively establishes that no one other than Mr. Coffaro has any recollection of the events leading up to the accident," and that no one else "can testify as to what caused the accident, or that Mr. Coffaro breached any duty." (Docket No. 21 at 6). Because of the alleged absence of evidence that Coffaro was negligent and that this purported negligence led to injury, Defendants request that this case be dismissed in its entirety since the claim against Barr-Nunn is grounded on a claim of vicarious liability for Coffaro's alleged negligence.

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

In order to be liable for negligence under Tennessee law, a plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury; (4) causation in fact; and (5) proximate or legal cause. Colin v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998). "Recovery in a negligence action may occur only if the plaintiff can prove that the defendants' conduct was negligent and was the proximate cause of plaintiff's injury." Kellner v. Budget Car and Truck Rental, Inc., 359 F.3d 399, 403 (6th Cir. 2004)(applying Tennessee law). Therefore, negligence "is not presumed from the mere fact of an accident or injury." Id.

"In Tennessee, the common-law standard of conduct to which a person must conform to avoid being negligent is the familiar 'reasonable person under similar circumstances' standard." Rains v. Bend of the River, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003). However, legal duties may be further delineated by law. Id.

Under Tennessee law, drivers have a duty to exercise due care. Specifically, the Tennessee Code provides:

> Not withstanding any speed limit or zone in effect at the time, or right of way rules that may be applicable, every driver of a motor vehicle shall exercise due care to avoid colliding with any other motor vehicle . . by operating the motor vehicle at a safe speed, by maintaining a safe lookout, keeping the motor vehicle under proper control and by devoting full time and attention to operating the motor vehicle, under the existing circumstances to avoid endangering life, limb, or property.

T.C.A. § 55-8-136(b). Moreover, commercial motor carriers and their employees are required to comply with the Federal Motor Carrier Safety Regulations. 49 C.F.R. 392.1. Those regulations contain specific provisions relating to the operation of commercial motor vehicles during hazardous weather:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain,

> dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. . . .

49 C.F.R. § 392.14.

There are questions of fact as to whether Coffaro exercised due care, and, in fact, whether he should have exercised extreme caution under the circumstances. The existence of those questions preclude summary judgment because this Court cannot say, as a matter of law, that the alleged failure to exercise the appropriate care was not a cause of the accident in this case and the consequent injuries to Pedigo. See, Rains, 124 S.W.3d at 588 ("Questions regarding breach of duty, causation in fact, and legal causation are ordinarily questions of fact for the jury").

Coffaro claims that, while one to two inches of wet snow had fallen, it was only lightly snowing at the time of the accident and the roadway was "slushy." Even assuming that traveling at 50 miles per hour in "slushy" snow was reasonable, others describe more dire weather conditions. Further, there is some testimony from which a jury could conclude that Coffaro was traveling even faster than he claims, and that he struck the Pedigo vehicle while it was still in the right lane.

According to Pedigo, the "roads were very bad," and, while "[t]he snow had lightened up," it had not stopped, and there was "thick ice" on the roadway. He claims he stayed exclusively in the right lane because that lane had been plowed, while the left lane had not. He also testified that, to the best of his recollection (the accident left him in a coma for ten days), he never left the right lane, even as he slid from the left to the right. (Jeremiah Pedigo Depo. at 53-60). Pedigo's passenger, South, also claims the road was far from pristine, testifying it was "snowy and slick out." (South Depo. at 18).

Moreover, two others testified in their depositions as to the conditions of the roadway and the

5

apparent relative speed of the truck in relation to those conditions. Joe Tice ("Tice") was traveling with April Killinger ("Killinger") eastbound on I-40. Tice described the roadway as "very slick and icy" (Tice Depo. at 22), while Killinger described it as "slick." (Killinger Depo. at 19). After driving on the interstate for approximately five minutes, their vehicle was passed by a tractor trailer which Tice described as going "very fast." (Tice Depo. at 22). Killinger testified in her deposition that the truck was "flying," that it was going almost twice as fast as their 30-35 mile per hour speed, and that she complained to Tice that the truck "was going way too fast." (Killinger Depo. at 15-18). Ten to fifteen minutes later, they came upon the accident scene, after having been passed by an ambulance which was going "pretty fast," but "not as fast as the truck was[.]" ((Id. at 17).[1]

In light of the evidence presented, this Court cannot conclude, as a matter of law, that Coffaro was not negligent. Accepting as true the evidence presented by Plaintiffs, a jury could conclude that Coffaro was driving too fast for the road conditions and that the excess speed prohibited him from properly responding to Pedigo's sliding vehicle. Moreover, a jury could credit Pedigo's testimony that he never left his own lane when he was struck by Coffaro's truck. Either conclusion could support a finding that Coffaro failed to exercise due care and/or extreme caution and that this failure led to Pedigo's injury since there is no evidence in the present record that Pedigo would have otherwise crashed or that, even if he did, his injuries would have been as extensive.

The facts presented in the summary judgment record distinguish this case from Kellner and Phillips v. Strange Truck Lines, 2008 WL 803129 (Tenn. Ct. App. 2008), both of which are heavily relied upon by Defendants. Kellner is distinguishable because it dealt with Tennessee's codifications

---

[1] While the submitted deposition excerpts do not make it clear, the Court assumes for present purposes that the "truck" identified by Tice and Killinger was the one being driven by Coffaro. Defendants do not argue otherwise in their papers.

6

of "the standard of care for parked and disabled vehicles," and, the evidence disclosed that defendant "did not violate any of Tennessee's traffic provisions relating to disabled vehicles." Kellner, 359 F.3d at 404 & 405. Here, as already noted, a jury could conclude that Coffaro violated the statutory duties of exercising reasonable care and/or extreme caution.

While Phillips involved a tractor trailer and motor vehicle collision, the similarities end there because, after the General Sessions Court found in favor of defendant in a bench trial, the plaintiff in Phillips sought to create a genuine issue of material fact in the Circuit Court by merely offering "his opinion as to what happened or, stated another way, his theory of how the collision occurred." Phillips, 2008 WL 803129 at *3. Here, to the contrary, there is testimony from witnesses on key issues of fact, including the weather conditions, Coffaro's speed in relation to those conditions, the fact that Coffaro failed to slow down even as Pedigo began to slide, and Coffaro's and Pedigo's lane of travel immediately before the accident.

Accordingly, Defendants' Motion for Summary Judgment (Docket No. 20) is hereby DENIED.

It is SO ORDERED.

_____
Todd J. Campbell
United States District Judge